Filed 3/21/16  Stovall v. Cox CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JEANNA STOVALL,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>KIERAN A. COX,<br><br>        Defendant and Appellant. | A146084<br><br>(Alameda County<br>Super. Ct. No. AF12639961) |

Kieran A. Cox (appellant) appeals an order disqualifying his father, attorney Donald Cox (Mr. Cox), from representing appellant in this and other proceedings related to the custody and support of appellant's son. We find no abuse of discretion and shall affirm the disqualification order.

**Factual and Procedural History**

In July 2012, the minor's mother filed the present action against appellant seeking custody of their young son and child support. In May 2013, mother sought to disqualify Mr. Cox from representing appellant on the grounds, among others, that the rules of professional conduct strongly recommend that an attorney refrain from representing a family member due to the appearance of impropriety and because Mr. Cox had previously served as a witness in a related matter. Apparently, mother's motion was never heard and the issue was not addressed until the court, on its own motion, raised it at a hearing on March 23, 2015. The court set a briefing schedule and a hearing for May 5, 2015.

1

At the May 5 hearing, the parties argued extensively regarding disqualification. The court took the matter under submission and provided an opportunity for supplemental briefing. On June 29, 2015, the court issued an extensive order disqualifying Mr. Cox from representing appellant in these and other related proceedings. Appellant timely filed a notice of appeal.

**Discussion**

"An order granting or denying a disqualification motion . . . is reviewed for abuse of discretion [citation]. The trial court's ruling is presumed correct [citation] and reversal is permissible 'only when there is no reasonable basis for the trial court's decision' [citation]. We accept as correct all of the court's express or implied findings that are supported by substantial evidence. [Citation.] [¶] 'In viewing the evidence, we look only to the evidence supporting the prevailing party. [Citation.] We discard evidence unfavorable to the prevailing party as not having sufficient verity to be accepted by the trier of fact. [Citation.] Where the trial court has drawn reasonable inferences from the evidence, we have no power to draw different inferences, even though different inferences may also be reasonable.' " (*Kennedy v. Eldridge* (2011) 201 Cal.App.4th 1197, 1203 (*Kennedy*).)

In *Kennedy*, as is this case, the court reviewed an order granting a mother's request to disqualify the paternal grandfather from representing the father in a child custody and support action. (*Kennedy, supra,* 201 Cal.App.4th at p. 1200.) The court identified two grounds, among others, for the disqualification of father's attorney. First, the court found that disqualification was necessary under the advocate-witness rule, which prohibits an attorney from acting both as an advocate and a witness in the same proceeding. (*Id.* at pp. 1208-1211 [advocate-witness rule applies in court trials.].) The court explained, "Decades ago, the California Supreme Court firmly embraced the ethical prohibition against an attorney taking on the dual roles of advocate and witness: 'An attorney who attempts to be both advocate and witness impairs his credibility as witness and diminishes his effectiveness as advocate.' [Citation.] More recently, our Supreme Court declared that where it becomes likely that an attorney will testify as a material witness, he

2

should ' "resolve any doubt in favor of preserving the integrity of his testimony and against his continued participation as trial counsel." ' " (*Id*. at pp. 1210-1211.) The court observed that "The wisdom of the advocate-witness prohibition is vividly exemplified in this family law dispute, where it is probable that [counsel] may not only provide important testimony affecting the outcome, but actually represent his son in an adversarial role against the mother of his grandson. Under no judicially tolerable circumstance can [counsel] effectively perform such multiple, awkward and conflicting duties." (*Id*. at p. 1211.)

The *Kennedy* court also reasoned that disqualification was required because "the multiple and interconnected family entanglements present here result in a strong appearance of impropriety and undermine the integrity of the judicial system." (*Kennedy, supra,* 201 Cal.App.4th at p. 1211.) The court explained that "family law matters deserve particular attention when it comes to maintaining high standards in ethics. Family law cases delve into the most intimate and personal of human affairs and therefore should receive careful scrutiny when potential ethical conflicts arise. ' "Matters of domestic relations are of the utmost importance to the parties involved and also to the people of the State of California." ' [Citations.] 'This is especially so where the custody of a minor child is involved. Such children are the future citizens of this state and it is impossible to exercise too much care in the selection of the persons who are to care for and guide them during their period of infancy. It is likewise extremely important that they be provided with the best surroundings of which the circumstances permit.' [Citation.] [¶] A family court's function is to make delicate decisions that promote the child's best interest. [Citation.] This process could be severely disrupted in a situation where the child's grandfather might well argue for reducing the mother's time with her child, where counsel could wind up both litigating and testifying about what goes on in his household, and where [counsel's] self-interest could skew the legal advice he gives to his own son." (*Id*. at p. 1212.)

In disqualifying Mr. Cox in this case, the court relied heavily on *Kennedy*. The court noted that although the custody trial has been completed, it "has no illusions that

3

the litigation between these parties will soon subside. Quite the contrary, and as discussed further below, Mr. Cox has filed more than one hundred counts of contempt against [mother] that have yet to be heard. During the May 5, 2015 hearing Mr. Cox had great difficulty separating his role as a father and grandfather from his role as counsel. This court finds it highly unlikely that those lines will not be further blurred during the contempt proceedings. As a result Mr. Cox's conflicting role as counsel and witness is a factor that cumulatively supports the disqualification of Mr. Cox in this matter." The court continued, "Much like the facts in *Kennedy*, Mr. Cox is [appellant's] father and is the grandfather of [the child] whose best interests are at the heart of the controversy. Prior to the breakdown of the parties' relationship, Mr. Cox advised [mother] as to the formation of her business. Mr. Cox testified in the domestic violence proceedings and has referred to himself in the third person when recounting events in the custody trial."

The judge identified three additional " 'family entanglement' factors" that she found persuasive in considering whether Mr. Cox should be disqualified. First, the court cited an "inappropriate and inflammatory" declaration by appellant, which had been prepared and submitted to the court on the letterhead of Mr. Cox's law firm. At the time the declaration was submitted in 2014, the court admonished Mr. Cox that his "emotions are getting in [his] way in this case" and expressed concern that Mr. Cox was "losing perspective." At the disqualification hearing, Mr. Cox claimed that he had not seen the offending declaration until after it was filed and that he had "no control over it." In her order disqualifying Mr. Cox, the court rejected Mr. Cox's explanation stating, "While Mr. Cox is perhaps correct that any client could, without permission, use an attorney's letterhead to file an abusive pleading, this court finds it vexing that an attorney, as an officer of the court, would not immediately bring that fact to the attention of the court, seek to have the filing removed from the record and strongly consider whether continued representation of the client was appropriate. Mr. Cox did none of those things. Instead, Mr. Cox, not only tolerated [appellant's] actions, he defended and downplayed the conduct and has continued to represent [appellant] without pause."

4

Next, the court expressed concerns that it was unclear what, if anything, appellant pays Mr. Cox for his representation and observed that "[w]hile this court is not opining as to whether Mr. Cox should charge his son for legal services, the fact that [appellant] appears to have an endless supply of legal services from Mr. Cox, who has described himself as 'semi-retired', has led to an unfettered amount of litigation and filings in this matter." The court explained that "it is not in the best interest of this minor child to be at the center of litigation for the entirety of his youth" and "[i]f both counsel approached this case with objectivity and both parties had to pay for all of the hours of legal service they receive, perhaps the parties would turn to meaningful alternative dispute resolution instead of litigation to resolve their daily disagreements."

Finally, the court found that "Mr. Cox has allowed his personal views regarding his son to infiltrate both his legal arguments and his ability to consistently and credibly present factual information to the court." As an example, the court cited discrepancies in Mr. Cox's representations about his son's financial ability to pay child support and expressed concerns about Mr. Cox's "candor" with the court.

Ultimately, the court concluded that "Mr. Cox's former representation of [mother], his conflicting roles of witness and lawyer, and the extensive family entanglements, which . . . have contributed to Mr. Cox's loss of professional objectivity, cumulatively support the disqualification of Mr. Cox as [appellant's] counsel in the ongoing parentage case . . . and all related cases between [appellant and mother]." The court observed that "this is a case where [appellant's] choice of counsel must give way to the preservation of the public trust in the scrupulous administration of justice and the integrity of the bar."

Contrary to appellant's arguments, the trial court's reliance on *Kennedy, supra*, 201 Cal.App.4th 1197 is appropriate, its decision is well-reasoned and its findings are amply supported by the record. Any financial hardship suffered by appellant as a result of counsel's disqualification is unfortunate, but necessary under the circumstances. (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1145.) Any procedural error arising out of the allegedly improperly filed ex parte request that preceded the court's ruling is harmless. Appellant was given ample

5

opportunity to argue in opposition to the disqualification motion. Finally, nothing in the record supports appellant's contention that "[t]he court's disqualification is fundamentally biased and retaliatory in nature on the heels of [his] successful remand of the permanent child support order" or that the order was "meant to dissuade appellant from pursuing contempt actions against [mother]."

## Disposition

The order disqualifying Mr. Cox from representing appellant in these proceedings is affirmed. Jeanna Stovall shall recover her costs on appeal.


_____
Pollak, J.


We concur:


_____
McGuiness, P. J.


_____
Jenkins, J.